## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY )
AND ETHICS IN WASHINGTON, )
455 Massachusetts Ave., N.W., Sixth Floor )
Washington, D.C.  20001, )
 )
NOAH BOOKBINDER )
10206 Brookmoor Dr. )
Silver Spring, MD 20901 )
 )
          Plaintiffs, )
 )
   v. )
 )
FEDERAL ELECTION COMMISSION )
999 E Street., N.W. )
Washington, D.C.  20463 )
 )
        Defendant. )
_____)

Civil Action No.

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1.    This is an action for injunctive and declaratory relief under the Federal Election

Campaign Act of 1971 ("FECA" or "the Act"), 52 U.S.C § 30109(a)(8)(C), and the

Administrative Procedure Act, 5 U.S.C. § 706, challenging as arbitrary, capricious, an abuse of

discretion, and contrary to law the dismissal by the Federal Election Commission ("FEC" or

"Commission") of an administrative complaint by Citizens for Responsibility and Ethics in

Washington ("CREW") and Noah Bookbinder (collectively "Plaintiffs") against Sherry L. Huff,

Carey Vaughn Brown, Account Pros, Inc., Credit Protection Depot, Credit Payment Services,

Energy Way Corp., Republican Union PAC, and James Harmon personally and as treasurer of

the Republican Union PAC, for violating the FECA's ban on making political contributions in

the name of another, knowingly permitting one's name to be used to effect a contribution in the

name of another, and knowingly accepting a contribution made by one person in the name of another.

## JURISDICTION AND VENUE

2.      This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 52 U.S.C. § 30109(a)(8)(A) and 5 U.S.C. § 702.  This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201(a), and 2202. Venue lies in this district under 52 U.S.C. § 30109(a)(8)(A) and 28 U.S.C. § 1391(e).

## PARTIES

3.      Plaintiff CREW is a non-profit, non-partisan corporation organized under Section 501(c)(3) of the Internal Revenue Code.

4.      CREW is committed to protecting the right of citizens to be informed about the activities of government officials, ensuring the integrity of government officials, protecting our political system against corruption, and reducing the influence of money in politics.  CREW works to advance reforms in the areas of campaign finance, lobbying, ethics, and transparency. Further, CREW seeks to ensure that campaign finance laws are properly interpreted, enforced, and implemented.

5.      To advance its mission, CREW uses a combination of research, litigation, advocacy, and public education to disseminate information to the public about public officials and their actions, and the outside influences that have been brought to bear on those actions.  A core part of this work is examining and exposing the special interests that have influenced our elections and elected officials and using that information to educate voters regarding the integrity of public officials, candidates for public office, the electoral process, and our system of government.

6.     Toward this end, CREW monitors the activities of those who run for federal office as well as those groups financially supporting candidates for office or advocating for or against their election.  CREW regularly reviews campaign finance reports that groups, candidates, and political parties file with the FEC disclosing their expenditures and, in some cases, their contributors.  Using the information in those reports, CREW, through its website, press releases, reports, and other methods of distribution, publicizes the role of these individuals and entities in the electoral process and the extent to which they have violated federal campaign finance laws.

7.     CREW also files complaints with the FEC when it discovers violations of the FECA.  Publicizing violations of the FECA and filing complaints with the FEC serve CREW's mission of keeping the public, and voters in particular, informed about individuals and entities that violate campaign finance laws and deterring future violations of campaign finance laws.

8.     CREW is hindered in carrying out its core programmatic activities when those individuals and entities that attempt to influence elections and elected officials are able to keep their identities hidden.  Likewise, the FEC's refusal to properly administer the campaign finance laws, particularly the FECA's reporting requirements, hinders CREW in its programmatic activity, as compliance with those reporting requirements often provides CREW with the only source of information about those individuals and groups funding the political process.  As a result of the FEC's refusal to enforce the FECA, organizations and individuals are able to launder their contributions through third parties.  This deprives CREW of information critical to advancing its ongoing mission of educating the public to ensure the public continues to have a vital voice in our political process and government decisions.

9.      A part of CREW's work in carrying out its central mission CREW focuses on so-called "pay-to-play" schemes.  Toward that end, CREW looks for correlations between donations to the campaign of a member of Congress or candidate and that member's subsequent congressional activities, including advocating for policies and legislation that serve the interests of the member's donors.  Information that an individual or entity made a large-dollar contribution may be very revealing about the influences that donor has brought to bear on the member post-election.  Without information about the individuals and entities funding the political activities of organizations and individuals, CREW is stymied in fulfilling its central mission.

10.     As an example, in May 2013, CREW issued a report, *Rise of the Machines*, detailing the growing political influence of high-frequency traders in Washington.  CREW's analysis was based in large part on the lobbying and campaign contribution records of 48 companies specializing in high frequency trading.  That data revealed that between the 2008 and 2012 election cycles, the campaign contributions of these firms increased by 673 percent, from $2.1 million during the 2008 election cycle to $16.1 million during the 2012 cycle.  CREW was able to obtain this information because of the disclosure requirements to which the organizations receiving those contributions – federal candidates, party committees, PACs, and super PACs – are subject under the FECA.

11.     As another example, CREW published *Stealth Donors*, a December 2012 report on donors who gave more than $1,000,000 to super PACs trying to influence the 2012 election.  The report revealed a dozen donors with policy or business interests that depended on the outcome of the elections, but whose efforts to sway voters largely were out of the public view.

CREW obtained the information used in this report from information the FECA requires political committees to disclose.

12.     Plaintiff Noah Bookbinder is the executive director of CREW.  He is a citizen of the United States and a registered voter and resident of the state of Maryland.  As a registered voter, Mr. Bookbinder is entitled to receive all the information the FECA requires those engaged in political activities to report publicly.  He is further entitled to the FEC's proper administration of the provisions of the FECA.  Mr. Bookbinder is harmed in exercising his right to an informed vote when a political committee fails to report the true source of its contributions, as the FECA requires.

13.     When Plaintiffs file complaints against violators of the FECA, they rely on the FEC, as the exclusive civil enforcement authority, to comply strictly with the FECA when making its enforcement decisions.  *See* 52 U.S.C. § 30107(e).  Plaintiffs are harmed and are "aggrieved" parties when the FEC dismisses their complaints contrary to the FECA, refuses to enforce the FECA's mandatory disclosure requirements, or otherwise acts contrary to the requirements of the FECA.  *See* 52 U.S.C. § 30109(a)(8)(C).

14.     Defendant FEC is the federal agency established by Congress to oversee the administration and civil enforcement of the FECA.  *See* 52 U.S.C. §§ 30106, 30106(b)(1).

**STATUTORY AND REGULATORY BACKGROUND**

15.     The FECA and FEC regulations prohibit making a contribution in the name of another person and knowingly permitting one's name to be used for the purpose of making a contribution in the name of another person.  Specifically, 52 U.S.C. § 30122 provides in relevant part: "No person shall make a contribution in the name of another person or knowingly permit

5

his name to be used to effect such a contribution[.]"  The statute further prohibits knowingly

accepting a contribution made by one person in the name of another person.  *Id.*

16.     FEC implementing regulations, 11 C.F.R. § 110.4(b), echo these prohibitions on

making a contribution in the name of another, knowingly permitting one's name to be used to

effect a contribution, knowingly helping or assisting another to do so, and knowingly accepting a

contribution made by one person in the name of another person.  The regulation includes, as an

example of a prohibited contribution, giving money, "all or part of which was provided to the

contributor by another person (the true contributor) without disclosing the source of money[.]"

*Id.* at § 110.4(b)(2).

17.     Under the FECA, any person who believes there has been a violation of the Act

may file a sworn complaint with the FEC.  52 U.S.C. § 30109(a)(1).  Based on the complaint, the

response from the person or entity alleged to have violated the Act, facts developed by the Office

of General Counsel ("OGC"), and any OGC recommendation, the FEC may vote on whether

there is "reason to believe" a violation of the FECA has occurred.  52 U.S.C. § 30109(a)(2).  A

"reason to believe" exists where a complaint "credibly alleges" a violation of the FECA "may

have occurred."  FEC Statement of Policy Regarding Commission Action in Matters at the Initial

Stage in the Enforcement Process, 72 Fed. Reg. 12545 (Mar. 16, 2007).  If the FEC finds there is

"reason to believe" a violation of the FECA has occurred, the FEC must notify the respondents

of that finding and "shall make an investigation of such alleged violation."  52 U.S.C. §

30109(a)(2).

18.     If the FEC finds no reason to believe a violation of the FECA has occurred and

dismisses the matter, any "party aggrieved" may seek judicial review in the United States

District Court for the District of Columbia.  52 U.S.C. § 30109(a)(8)(A).  All petitions from the

dismissal of a complaint by the FEC must be filed "within 60 days after the date of the dismissal." 52 U.S.C. § 30109(a)(8)(B).

19.     The district court reviewing the FEC's dismissal of a complaint may declare the FEC's actions "contrary to law." 52 U.S.C. § 30109(a)(8)(C).  The court also may order the FEC "to conform with such declaration within 30 days." *Id.*  If the FEC fails to abide by the court's order, the FECA provides the complainant with a private right of action, brought in the complainant's own name, "to remedy the violation involved in the original complaint." *Id.*

## FACTUAL BACKGROUND

20.     On July 19, 2012, Sherry L. Huff contributed $1 million to the Republican Union PAC.  Ms. Huff had never before made any other federal political contributions or, on information and belief, any state political contributions.

21.     Publicly available information indicates Ms. Huff likely did not have the assets to make a $1 million contribution.  For example, she owns or owned property located at 500 Thomas Drive, Rossville, Georgia that in the 2012 tax year was valued at $50,398.

22.     Ms. Huff also was listed as the owner of property located at Steele Road, Russville, Georgia that was valued at $76,537 for the 2012 tax year.

23.     Ms. Huff was the employee or officer of several companies owned or controlled by Carey Vaughn Brown, the owner of an Internet payday loan empire that generates or generated annual loan revenues of hundreds of millions of dollars.

24.     The FEC report filed by the Republican Union PAC disclosing Ms. Huff's contribution identified her employer as "Account Pros Inc./ CPD," and her occupation as "Business Woman."

25.     Account Pros, Inc. was registered in Nevada, but located in Chattanooga, Tennessee.  Ms. Huff served as the treasurer and secretary of Account Pros, Inc., and also was a director.

26.     Mr. Brown was the owner, manager, agent, and beneficiary of Account Pros, Inc.

27.     CPD, or Credit Protection Depot, also was registered in Nevada, but had an office and employees in Chattanooga, Tennessee.

28.     Mr. Brown was the owner, manager, agent, and primary beneficiary of Credit Protection Depot.

29.     Account Pros, Inc. and Credit Protection Depot are among the more than 20 companies associated with, owned, and/or managed by Mr. Brown.  Many of the companies are or were shell corporations – some set up overseas – to protect them and Mr. Brown from lawsuits and to reduce taxes.

30.     The Federal Trade Commission investigated several of these companies, and California, Oregon, and New Hampshire issued cease-and-desist orders to several of them.

31.     Credit Payment Services is one of the central entities in this web of companies. Mr. Brown has identified Credit Payment Services as behind several offshore corporations set up to administer payday loans.

32.     Mr. Brown also has described Ms. Huff as an employee of Credit Payment Services, describing her first as a bookkeeper and then as the company's chief financial officer. He also stated Ms. Huff had the authority, shared by him and possibly one other employee, to sign checks for Credit Payment Service's bank accounts in Tennessee and Nevada.

33.     In addition, Ms. Huff is or was the secretary and chief financial officer for the Energy Way Corp.  Reportedly Mr. Brown is or was the owner of the Energy Way Corp.

34.     Unlike Ms. Huff, Mr. Brown had made multiple political contributions before the $1 million contribution to the Republican Union PAC was made.  Mr. Brown had donated to the campaigns of Sen. Robert Corker (R-RN), Rep. Tom Graves (R-GA), former Rep. Zach Wamp (R-TN), House candidate Weston Wamp (R-TN), Senate candidate Tony Perkins (R-LA), gubernatorial candidate Roy Moore (R-AL), and gubernatorial candidate Van Hilleary (R-TN). He also had made contributions to the Republican National Committee, the National Republican Senatorial Committee, the National Republican Congressional Committee, Mike Huckabee for President, the Fred Thompson Political Action Committee, and Bauer for President 2000 Inc.

35.     In addition to the $1 million contribution made in Ms. Huff's name, the Republican Union PAC received only one other contribution, $500 from Gary Bohannon of Rancho Cucamonga, CA.

36.     On information and belief, the Republican Union PAC solicited Ms. Huff's $1 million contribution.

37.     The Republican Union PAC used most of the contributed money to buy billboards in Florida, Michigan, Ohio, Pennsylvania, and Virginia that attacked President Barack Obama for supporting same-sex marriage, and urged voters to vote Republican.

*Administrative Proceedings*

38.     On January 8, 2013, plaintiff CREW and then-complainant Melanie Sloan filed a complaint with the FEC against Sherry L. Huff, Carey Vaughn Brown, Account Pros., Inc., Credit Protection Depot, Credit Payment Services, Energy Way Corp., Republican Union PAC, and James Harmon in his official capacity as treasurer and in his individual capacity ("MUR 6713").  The complaint alleged that Mr. Brown or a company he owned or controlled made the $1 million contribution to the Republican Union PAC in July 2012 in the name of Ms. Huff in

violation of 52 U.S.C. § 30122.  The complaint further alleged that Ms. Huff knowingly permitted her name to be used to make the contribution, and that the Republican Union PAC and James Harmon personally and as treasurer violated 52 U.S.C. § 30122 by knowingly accepting the illegal contribution.

39.     On November 18, 2015, CREW filed an amended complaint removing Melanie Sloan as a complainant and adding Noah Bookbinder as a complainant.  The claims in the amended complaint duplicated those of the initial complaint.

40.     According to the FEC, the respondents filed a joint response to the complaint denying any respondent violated 52 U.S.C. § 30122, and claiming Ms. Huff made the $1 million contribution from money she withdrew from Credit Protection Depot, a company she claimed to solely own and control.  The FEC has not yet made this response or any other document in MUR 6713 public.

41.     By letter dated July 17, 2017, and mailed on July 19, 2017, the FEC informed CREW and Mr. Bookbinder that more than one month earlier, on June 6, 2017, the Commission had found no reason to believe the respondents violated 52 U.S.C. § 30122, and accordingly closed its file.

42.     Accompanying the letter was a six-page factual and legal analysis.  Based almost entirely on the joint response, including affidavits by respondents and exhibits provided by them, the FEC concluded that Ms. Huff was the true source of the $1 million contribution to the Republican Union PAC.  The FEC made a factual finding that Mr. Brown's role in the Credit Protection Depot apparently "was limited," and that it was Ms. Huff who owned and controlled the company.  The FEC further asserted it had no information that Ms. Huff was not entitled to withdraw funds from Credit Protection Depot, or that the withdrawal was improper in any way.

43.     The FEC also based its conclusion on the respondents' claim that the $1 million contribution came from Ms. Huff's personal bank account, which she obtained via a wire transaction from Credit Protection Depot.  Respondents further claimed Ms. Huff withdrew the $1 million in two separate transactions and deposited the entire amount into a new account from which she made the contribution to the Republican Union PAC.

## PLAINTIFFS' CLAIMS FOR RELIEF

### CLAIM ONE

**The FEC's Failure to Find Reason to Believe Sherry Huff Violated 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b) Was Arbitrary, Capricious, and Contrary to Law**

44.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as fully set forth herein.

45.     Contrary to the FEC's conclusion, Mr. Brown was the owner, manager, agent, and primary beneficiary of Credit Protection Depot and Account Pros, Inc.  As a result, Ms. Huff knowingly and willfully permitted her name to be used to make a contribution from Mr. Brown, Credit Protection Depot, Account Pros, Inc., or another company owned or controlled by Mr. Brown in violation of 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b).

46.     Plaintiffs are therefore entitled to relief in the form of a declaratory order that defendant FEC is in violation of its statutory responsibilities under 52 U.S.C. § 30109(a)(8) and 5 U.S.C. § 706, and has acted arbitrarily and capriciously, abused its discretion, or acted contrary to law in dismissing MUR 6713.

## CLAIM TWO

**The FEC's Failure to Find Reason to Believe Carey Vaughn Brown, Account Pros, Inc., Credit Protection Depot, Credit Payment Services, Energy Way Corp., or Another Company Mr. Brown Owned or Controlled Violated 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b) was Arbitrary, Capricious, and Contrary to Law**

47.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as fully set forth herein.

48.     Contrary to the FEC's conclusion, Mr. Brown was the owner, manager, agent, and primary beneficiary of Credit Protection Depot and Account Pros, Inc.  As a result, Mr. Brown, Credit Protection Depot, Account Pros, Inc., or another company owned or controlled by Mr. Brown knowingly and willfully made a contribution in Ms. Huff's name in violation of 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b).

49.     Plaintiffs are therefore entitled to relief in the form of a declaratory order that defendant FEC is in violation of its statutory responsibilities under 52 U.S.C. § 30109(a)(8) and 5 U.S.C. § 706, and has acted arbitrarily and capriciously, abused its discretion, or acted contrary to law in dismissing MUR 6713.

## CLAIM THREE

**The FEC's Failure to Find Reason to Believe the Republican Union PAC and James Harmon Violated 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b) Was Arbitrary, Capricious, and Contrary to Law**

50.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as fully set forth herein.

51.     Contrary to the FEC's conclusion, Mr. Brown was the owner, manager, agent, and primary beneficiary of Credit Protection Depot and Account Pros, Inc.  As a result, Republican Union PAC and James Harmon knowingly and willfully accepted a contribution by Mr. Brown

12

or one of the companies he owned or controlled in Ms. Huff's name in violation of 52 U.S.C. §

30122 and 11 C.F.R. § 110.4(b).

52.     Plaintiffs are therefore entitled to relief in the form of a declaratory order that

defendant FEC is in violation of its statutory responsibilities under 52 U.S.C. § 30109(a)(8) and

5 U.S.C. § 706, and has acted arbitrarily and capriciously, abused its discretion, or acted contrary

to law in dismissing MUR 6713.

<u>**REQUESTED RELIEF**</u>

WHEREFORE, Plaintiffs respectfully respect that this Court:

(1) Declare that the FEC's dismissal of MUR 6713 was arbitrary, capricious, an abuse of

discretion, and contrary to law;

(2) Order the FEC to conform to such declaration within 30 days pursuant to 52 U.S.C.

§ 30109(a)(8)(C);

(3) Award Plaintiffs their costs, expenses, and reasonable attorneys' fees in this action;

and

(4) Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,


Adam J. Rappaport
(D.C. Bar No. 479866)
Anne L. Weismann
(D.C. Bar No. 298190)
Stuart C. McPhail
(D.C. Bar No. 1032529)
Citizens for Responsibility and Ethics
       in Washington
455 Massachusetts Ave., N.W., Sixth Floor
Washington, D.C.  20001
Phone: (202) 408-5565

Facsimile: (202) 588-5020
arappaport@citizensforethics.org

August 4, 2017                           Attorneys for Plaintiffs